**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-

Niema Moharer, on behalf of himself and all
other plaintiffs similarly situated, known and
unknown

      Plaintiff,

v.

Lipsey Communications, LLC, a Louisiana
Limited Liability Company d/b/a
Connectivity Source             ***JURY DEMAND***

      Defendant.

---

## **COMPLAINT**

---

NOW COMES Plaintiff, **NIEMA MOHARER,** ("Plaintiff" or "named Plaintiff"), on behalf of himself and all other Plaintiffs similarly situated, by and through his attorneys, John W. Billhorn and Samuel D. Engelson of Billhorn Law Firm, and for his Complaint against Defendant, **LIPSEY COMMUNICATIONS, LLC D/B/A CONNECTIVITY SOURCE** (the "Defendant" or "Lipsey"), states as follows:

## I.    **NATURE OF ACTION**

1.     This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq* ("COMPS") and the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.*

## II.    <u>JURISDICTION AND VENUE</u>

2.      Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Colorado statutory claims, pursuant to 28 U.S.C. §1367.

3.      Jurisdiction also arises through diversity of citizenship pursuant to 28 U.S.C. §1332(a). The citizenship of the Parties is completely diverse. Plaintiff is a citizen of Colorado, as are all of the putative Class members asserted to be entitled to Notice of the action. Defendant is incorporated in Louisiana and domiciled in Texas, is a citizen thereof for purposes of diversity jurisdiction.

4.      Defendant is incorporated in Louisiana, transacted business in various states, including Colorado, Louisiana and Texas, and maintains its headquarters and principal place of business at 3720 Dacoma St. in Houston, Texas.

5.      As such, all Parties are citizens of, domiciled and otherwise live in different states.

6.      Additionally, the amount of money in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue lies in the District of Colorado in that during all times relevant to the employment relationship, Plaintiff performed work in this district and is a resident of this district and Defendant is or was engaged in business in this district.

## III.   <u>THE PARTIES</u>

8.      Defendant, LIPSEY  COMMUNICATIONS, LLC D/B/A CONNECTIVITY SOURCE (hereinafter referred to as "Lipsey") is a Louisiana limited liability company, domiciled in Texas, that owns and operates a chain of authorized T-Mobile retail stores. Lipsey describes itself as one of T-Mobile's largest Authorized Retailers serving customers nationwide in our T-Mobile branded

stores.[1] Lipsey operates in at least thirty (30) states.[2] Lipsey stores sell mobile phone data plans, smartphones, cell phones and related accessories to customers.

9.      Lipsey's primary business address is 3720 Dacoma St. in Houston, Texas.

10.     Lipsey  is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii).

11.     Lipsey ordered, used and handled goods and materials and other products which moved in interstate commerce prior to being used or purchased in Colorado.

12.     During all relevant times, Lipsey was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

13.     Lipsey, through their director(s), executive(s) and other corporate SMs, oversaw all operations of Lipsey, including business strategy and daily operations, sales, personnel decisions, regulatory compliance, and was responsible for assigning tasks, creating and distributing schedules, staff supervision, wage policies and otherwise oversaw all aspects of Lipsey's business operations and interactions.

14.     Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Lipsey. Lipsey in turn responded to those communications with the authority described herein.

---

[1] https://connectivitysource.net/
[2] https://connectivitysource.net/

15.     Plaintiff, Niema Moharer, is a former employee of Defendant. Plaintiff worked for Lipsey from approximately February 2022 to March 2023.

16.     Plaintiff was compensated as both an hourly and salaried employee over his tenure with Lipsey.

17.     Plaintiff was initially hired as an hourly sales associate before being transitioned to a salary-exempt SM ("SM") position on approximately July 1, 2022.

18.     While employed as an SM, Plaintiff was paid a set salary, which served as compensation for all hours worked each week, including those over 40 in individual work weeks. At times, Plaintiff received some non-discretionary sales commissions in addition to his salary.

19.     As a salaried employee, Plaintiff did not receive overtime premiums of one and one-half times his regular rate of pay for hours worked over 40 in individual work weeks.

20.     As an SM, Plaintiff did not exercise independent discretion or judgment on matters of significance, manage two (2) or more full time employees, direct Lipsey's overall strategic business operations or perform primarily non-manual office duties.

21.     During Plaintiff's employment with Lipsey, Plaintiff spent almost all of his working time performing non-exempt sales associate duties, including selling cell phones, smart phones, data plans and accessories to customers on the floor.

22.     Plaintiff also performed other non-exempt duties, such as cleaning the store, stocking inventory, accepting deliveries, etc.

23.     Plaintiff participated and engaged in essential job duties and tasks on a daily or weekly basis that directly related and contributed to Lipsey's primary business of selling cell phones and related products to customers for profit.

24.     These tasks performed by Plaintiff:

a)      were not primarily office or non-manual;

b)      were not directly related to management or general business operations of Lipsey;

c)      did not include the primary duty of discretion and independent judgment on matters of significance;

d)      did not require or involve management of two (2) or more full-time employees;

e)      did not involve management of the enterprise or of a customarily recognized department or subdivision;

f)      did not involve authority to hire or fire other employees, suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees;

g)      did not involve being customarily and regularly engaged away from the Lipsey's place or places of business in performing a primary duty of makes sales; and

h)      required Plaintiffs to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

25.     As such, Plaintiff was misclassified as a salary-exempt employee. Lipsey should have at all times compensated Plaintiff as an hourly employee entitled to overtime premiums for hours worked over 40 in individual work weeks.

26.     Additionally, the claims of the Named Plaintiff, and the Plaintiff Class, are nearly identical in that regardless of which store location any SM herein worked, Lipsey hired, recruited,

enrolled and offered employment as an SM to all members of the Plaintiff Class premised on an a single, identical job description, including identical job duties, job objectives, job responsibilities, job qualifications (including experience and education), language skills, manual labor capabilities and general working conditions.

27.     The SM job description, which was used and implemented at all of Lipsey's retail stores within the District of Colorado, and elsewhere, was drafted, approved and disseminated by Lipsey's corporate offices in line with Lipsey's corporate directives and policies that were common to all Colorado stores.

28.     As a result of the common policies described above, the Named Plaintiff and members of the Plaintiff Class were improperly classified as salary exempt and denied overtime pay for work in excess of 40 hours in a work week.

29.     Throughout all times pertinent to Plaintiff's claims herein, Lipsey applied a common policy as to Plaintiff and other SM employees at their Colorado retail stores, in that Lipsey failed to compensate employees all earned overtime wages by implementing allegedly improper salary exemption(s).

30.     Additionally, throughout all times pertinent to Plaintiff's claims herein, Lipsey applied common policies, developed by Lipsey's executive board, executives and SMs, that were embedded in its management policies and procedures relative to Plaintiff and other employees.

31.     As a result of the common policies described above, Plaintiff and members of the Plaintiff Class were improperly denied overtime pay for work in excess of 40 hours in a work week.

32.     During Plaintiff's employment, Lipsey implemented and executed wage deductions for the costs of uniforms or related special apparel Lipsey required Plaintiff and members of the Plaintiff Class to wear during shifts.

33.     These uniform-related wage deductions imposed by Lipsey violated state wage laws.

34.     Common questions of law exist among the claims of Plaintiff and members of the Plaintiff Class in that each claims rests upon a challenge of Lipsey's claimed pay practices, exception(s) or exemption(s) to federal and state wage laws.

35.     All other unnamed Plaintiffs, known and unknown ("members of the Plaintiff Class", "Plaintiff Class" or "similarly situated Plaintiffs"), are past or present salaried SM employees who were misclassified as exempt and paid on a salary basis without overtime premiums for hours worked in excess of 40 in a workweek as described herein.

36.     As an employee(s) performing duties for an enterprise engaged in commerce, the named Plaintiff and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

## IV.     <u>STATUTORY VIOLATIONS</u>

### Collective Action Under the Fair Labor Standards Act

37.   Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiff as an opt-in representative or collective action, on behalf of himself and other Plaintiffs similarly situated who have been damaged by Defendant's failure to comply with 29 U.S.C. §201 *et seq*., to recover unpaid overtime wages and additional damages. Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks

liquidated damages under the Fair Labor Standards Act, Section 260.

**Colorado Overtime and Minimum Pay Standards Order, #38**

38.     Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq.*, Count IV of this action is brought by Plaintiff to recover unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiff herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

39.     Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq.*, Count V of this action is brought by Plaintiff to recover illegal uniform deductions executed by Lipsey on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiff herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

**Colorado Wage Act**

40.     Pursuant to the Colorado Wage Act, §8-4-101, *et seq.*, C.R.S., Count VI of this action is Plaintiff to recover earned, vested and determinable unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count VI. The claims asserted by Plaintiff herein under the CWA are proper for certification under Federal Rule of Civil Procedure 23.

## V.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

41.     Plaintiff, at all times pertinent to the cause of action, was employed by Defendant Lipsey.

42.     Plaintiff's employment as both a sales associate and SM were integral and indispensable to Lipsey's business, as without the work performed by Plaintiff within each of those roles, Lipsey would be unable to run their cell phone retail stores properly or competently or in a way that carried out the business objectives of Lipsey.

43.     Plaintiff was hired by Lipsey in approximately February 2022.

44.     Plaintiff was initially hired as a sales associate and was paid by the hour.

45.     As a sales associate, Plaintiff performed general sales duties, including selling cell phone data plans, devices and accessories to customers.

46.     As a sales associate, Plaintiff was classified as an hourly, non-exempt employee and was paid approximately $14.50 per hour. Plaintiff also received non-discretionary sales commission in addition to his hourly pay.

47.     On approximately July 1, 2022, Plaintiff was transitioned to an SM.

48.     Upon Plaintiff's transition to SM, Plaintiff still performed most, if not all, of the same duties he did as a sales associate, including selling phones and other products to customers on the floor.

49.     As an SM Plaintiff was classified as exempt and received an annual salary of approximately $40,500 paid every two weeks. Plaintiff also received non-discretionary sales commissions in addition to his salary.

50.     Plaintiff was compensated by salary based on a schedule of 86.67 hours per pay period. Lipsey used this 86.67 hour schedule as a generic placeholder in the "Hours" column of Plaintiff's paystubs.

51.     Plaintiff almost always worked in excess of the 86.67 hour "placeholder" Lipsey inserted onto his paystubs. Due to the intense demands of Lipsey's sales operations, Plaintiff regularly worked more than 100 hours over his two-week pay periods, including as many as almost 120 hours over a two-week period.

52.     Even as a salaried SM, Plaintiff still clocked in and out for his shifts. However, all of Plaintiff's paystubs reflected the 86.67 hour placeholder even though he regularly worked more than 86.67 hours each two-week pay period.

53.     While working for Lipsey as an SM, Plaintiff sometimes worked with one or two other employees, with each employee performing identical sales duties. At times, Plaintiff worked in Lipsey's retail stores alone and worked as the sole salesperson on premises.

54.     As an SM, Plaintiff was unable to, and did not, provide significant input on personnel decisions, including hiring, firing, discipline and compensation related to sales associates, SMs, or any other employees based on their performance. Lipsey's corporate office chose all employee candidates and made the final hiring decisions of new employees.

55.     All discipline and other personnel decisions related to other employees were handled by Lipsey's corporate office(s).

56.     As an SM, Plaintiff did not directly manage any other employees.

57.     During Plaintiff's tenure as SM, Plaintiff did not originate, develop, create or participate in the development of any specific sales training programs or materials. Plaintiff did

10

not contribute any original or unique work product related to any facet of Lipsey's business operations.

58.     In approximately January 2023, Plaintiff was terminated by Lipsey.

59.     While working for Lipsey as an SM, he was denied overtime premiums.

60.     While Plaintiff worked as a salaried employee, his day-to-day job duties were:

a)      were not primarily office or non-manual;

b)      were not directly related to management or general business operations of Lipsey;

c)      did not include the primary duty of discretion and independent judgment on matters of significance;

d)      did not require or involve management of two (2) or more full-time employees;

e)      did not involve management of the enterprise or of a customarily recognized department or subdivision of Lipsey;

f)      did not involve authority to hire or fire other employees, provide suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees;

g)      did not involve being customarily and regularly engaged away from the Lipsey's place or places of business in performing a primary duty of makes sales; and

h)      required Plaintiff to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

61.    Plaintiff regularly worked in excess of 40 hours each week because Lipsey implemented sales targets for Plaintiff to meet each month, such that substantial work hours were required each week to meet sales goals and quotas.

62.    Plaintiff was instructed to use Lipsey's template sales training and techniques and not deviate from them. Plaintiff had no authority to unilaterally alter or otherwise suggest changes to Lipsey's template sales materials and instructions.

63.    Plaintiff was required and expected to use Lipsey's corporate sales materials and training techniques. Lipsey provided template sales/marketing materials. Plaintiff had no authority or discretion to create or change sales/promotional materials.

64.    Plaintiff was at all times expected to diligently follow and adhere to corporate outlines and procedures for sales of T-Mobile products. Plaintiff was advised by Lipsey's corporate management employees that he was not permitted to deviate from corporate sales techniques and processes.

65.    Plaintiff had no authority over pricing of T-Mobile products sold by Lipsey. The pricing of all services and products offered by Lipsey were dictated by Lipsey (and T-Mobile). Plaintiff only had permission from Lipsey to offer a maximum $50 credit in certain, limited circumstances.

66.    As an SM, Plaintiff was required to adhere to strict sales goals and quotas.

67.    Plaintiff did not directly supervise two (2) or more full-time employees and did not have any direct reports. Plaintiffs did not have any true management responsibility over any of the hourly sales associates, as Lipsey and their corporate employees set schedules, pay, and managed performance.

68.     Plaintiff performed substantial non-exempt work including manual labor work (including cleaning, organizing, and stocking the store).

69.     Plaintiff also performed general data entry tasks, including entering customer information and paperwork into sales databases and answering customer phone calls to the store.

70.     Plaintiff's job was a product of Lipsey's myriad common policies and uniform procedures developed and implemented by Lipsey's corporate offices.

71.     Plaintiffs and all other SMs were employed under the terms the SM position description. All SMs were each provided identical copies of a position description at the start of their employments.

72.     The common terms of employment for SMs, including salary compensation for all hours worked, were intentionally and purposefully made identical by Lipsey in each store location within the District of Colorado, and elsewhere, so that Lipsey could establish uniformity and common practice among its retail stores.

73.     The uniform and common practices and policies implemented by Lipsey, including the job duties and compensation structure, applied to all SMs, including Plaintiffs. These uniform and common practices and policies as to SMs were vital for Lipsey to successfully replicate its consistent and proven model for profitable cosmetic clinics.

74.     Due to the uniform retail store model and related common policies and practices implemented by Lipsey's corporate offices, most, if not all, of the SM job duties as described were pre-determined by Lipsey's corporate policies, directives, template forms, manuals and instructions, etc.

75.     Lipsey, through its corporate offices, executive employees and other upper management employees, exercised extensive control over the SM job duties and day-to-day assignments, duties and tasks undertaken by Plaintiff and other SMs.

76.     Plaintiff's job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Lipsey's common corporate policies, structures, manuals and forms (i.e., training materials, sales strategies, scripts, etc.) such that Plaintiff and members of the Plaintiff Class were prohibited from exercising discretion and independent judgment as to matters of significance within Lipsey's retail operations.

77.     As SMs, Plaintiff was directed by Lipsey to strictly adhere to corporate policies and manuals, template forms, scripts, letters and documents, computer programs, and related items that were implemented at all retail stores in the District of Colorado and elsewhere.

78.     Because Plaintiff and members of the Plaintiff Class were required to adhere to Lipsey's uniform policies and guidelines, they were unable to exercise discretion and independent judgment as to the SM duties outlined by Lipsey in position descriptions.

79.     Lipsey directly controlled most, if not all, aspects of the day-to-day SM duties of Plaintiffs and members of the Plaintiff Class, through both common and uniform corporate policies and other verbal or written instructions by Lipsey's management employees based on said policies.

80.     This level of control exerted by Lipsey afforded no opportunity for Plaintiff and members of the Plaintiff Class to exercise the degree of discretion and independent judgment necessary to satisfy the administrative, executive exemption or any other purported salary exemption.

81.     Defendant provided step-by-step instructions to Plaintiff and members of the Plaintiff Class regarding certain metrics used to track sales, which were of importance to Lipsey in maintaining its uniform, profitable business model and which resulted in Plaintiffs and other SMs exercising no discretion as to selling and pricing.

82.     Most tasks performed by Plaintiff and members of the Plaintiff Class required the review and approval of Lipsey, who would review Plaintiff's work in conjunction with Lipsey's uniform corporate procedures and guidelines, such that Plaintiff and members of the Plaintiff Class were not permitted to independently make decisions regarding the majority of the aspects of their day-to-day job duties.

83.     Plaintiff and members of the Plaintiff Class were evaluated by Lipsey's management employees on a regular basis. Plaintiffs and all SMs were evaluated using identical, universal and common job performance evaluations developed by Lipsey's corporate office that were used by all clinics in the District of Colorado and elsewhere.

84.     Plaintiff and members of the Plaintiff Class were evaluated based on how well they satisfied certain sales metrics and policies implemented by Lipsey and whether they followed Lipsey's instructions on how to track or achieve these metrics and standards.

85.     Over the course of their employments, Plaintiff and members of the Plaintiff Class were reprimanded by Lipsey, including during regular employment evaluations, for failure to adhere satisfy the strict sales metrics based on the corporate guidelines, protocols, standards, policies and practices that determined most, if not all, aspects of the job duties of Plaintiff and Plaintiff Class members and how said duties were to be performed.

86.     As a result of Lipsey's overbearing, extensive and minute involvement and control over the day-to-day duties of Plaintiff and members of the Plaintiff Class and the affirmative lack of any supervisory responsibility, SMs did not qualify for the administrative exemption, executive exemption, or any other salary exemptions and should have been paid by the hour, including overtime premiums for hours worked in excess of 40 in individual work weeks.

87.     Plaintiff was misclassified by Lipsey as a salary-exempt SM employee.

88.     At all times during Plaintiff's employment, he should have been classified as a non-exempt hourly employee and paid overtime premiums for all hours worked over 40 in individual work weeks.

89.     Furthermore, Lipsey failed to include non-discretionary sales commissions in the calculation of Plaintiff's regular rate and corresponding overtime rate as required by law. Lipsey's failure to include non-discretionary commissions earned by Plaintiff and Plaintiff Class members in the calculation of their regular rates and the corresponding overtime rate as required by C.F.R. §778.117, 208 resulted in further non-payment of overtime wages.

90.     As part of Plaintiff's employment with Lipsey, he was required to wear a uniform inscribed with T-Mobile and Lipsey logos and identifiers.

91.     During the pay period of February 23, 2022 to March 9, 2022, Lipsey executed a deduction of $20.88 from Plaintiff's pay for the required uniform. The deduction is listed as a separate line item on Plaintiff's March 15, 2022 paystub under "Deductions" for "Uniform". This deduction covered two (2) T-Mobile branded t-shirts which were part of the uniform required by Lipsey for all employees.

92.     If employees needed more than the two shifts provided to them by Lipsey in exchange for the uniform deduction, Lipsey required Plaintiff and members of the Plaintiff Class to purchase the additional apparel themselves. This represented further violation of COMPS, as Lipsey did not cover costs of other uniform/apparel.

93.     COMPS requires employers to cover the costs of all purchases, maintenance, and cleaning of uniforms and other special apparel.

94.     Additionally, as of March 16, 2020, COMPS prohibited employers such as Lipsey from taking a uniform deposit as security for the return of a uniform furnished to an employee.

95.     The uniform wage deduction(s) executed by Lipsey was in violation of COMPS.

96.     Upon information and belief, including Plaintiff's personal knowledge about Lipsey's operations and workplace policies, all other employees in Colorado were required to wear identical or similar uniforms for which Lipsey reimbursed themselves via uniform wage deductions.

97.     Plaintiff and members of the Plaintiff Class worked or work in excess of forty (40) hours in a workweek without pay for hours worked over forty (40) at a rate of time and one-half their regular hourly rate of pay and were subjected to improper wage deductions for uniforms, pursuant to the requirements of the federal and state statutes herein relied upon.

98.     Lipsey has, both in the past and presently, willfully employed Plaintiffs and members of the Plaintiff Class as without pay at a rate of one and one-half times their rates of pay for hours worked in excess of 40 in a workweek and required employees to pay for mandatory uniforms.

99.     The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Lipsey, in that Lipsey recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Lipsey lacks the records required by 29 CFR Part 516, Plaintiffs and members of the Plaintiff Class will be capable of providing reasonable estimates of that time, as permitted by law.

100.     The non-compliant practices as alleged herein are common to Plaintiff and all other members of the Plaintiff Class.

101.     During their entire employments with Lipsey, Plaintiff, and members of the Plaintiff Class, were paid on a every other week. Plaintiffs, and members of the Plaintiff Class, were only paid their regular salary for all hours worked[3], including hours in excess of 40 hours in a single work week.

102.     Upon information and belief, Plaintiffs understood that other SM employees at all Lipsey locations in Colorado and elsewhere were paid in the same or similar fashion as described above and were also denied overtime premiums for hours worked in excess of 40 in individual work weeks as a result of Lipsey's improper salary classification.

103.     Plaintiffs, and members of the Plaintiff Class on a regular basis worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half their hourly rates of pay for such hours pursuant to the requirements of the federal and state law.

---

[3] Excluding non-discretionary sales commissions.

104.     Plaintiffs and members of the Plaintiff Class were not exempt from the overtime provisions of the FLSA or COMPS, or the wage deduction provisions of COMPS. Likewise, Plaintiffs and members of the Plaintiff Class were entitled to the wage protections afforded by the CWA, which applies to timely payment of earned overtime wages. As such, Plaintiffs and similarly situated employees were and are entitled to overtime premiums of time and one-half their hourly rates of pay for hours worked over 40 in individual work weeks.

105.     The claims brought herein by the Named Plaintiff are based on non-compliant practices and policies implemented by Lipsey and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-105.  Paragraphs 1 through 105 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 105 of this Count I.

106.     Plaintiff, and members of the Plaintiff Class, were each an "employee" pursuant to 29 U.S.C. §203(e).

107.     Defendant was an "employer" pursuant to 29 U.S.C. §203(d).

108.     Plaintiff, and members of the Plaintiff Class, were not exempt from the maximum hours provisions of 29 U.S.C. §207.

109.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiff, and all other Plaintiffs similarly situated, known and unknown, are entitled to

compensation for all hours worked and compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in any week during the two (2) years preceding the filing of this action.

110.     Defendant has at all times relevant hereto failed and refused to pay compensation to employees, including the Named Plaintiff herein and all other Plaintiffs similarly situated, known and unknown as described above.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)     prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)     Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendant's violations of the Fair Labor Standards Act; and

(d)     such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-110.  Paragraphs 1 through 110 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 110 of Count II.

111.    Lipsey's actions as complained above were done with Lipsey's knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether the policies and practices were in violation of those statutes.

112.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Lipsey, Lipsey possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

113.    Pursuant to the Fair Labor Standards Act, Plaintiff and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendant's violation of the Fair Labor Standards Act; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT III

### LIQUIDATED DAMAGES
### UNDER THE FAIR LABOR STANDARDS ACT

1-113.  Paragraphs 1 through 113 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 113 of Count III.

114.    In denying Plaintiff and members of the Plaintiff Class compensation as described

above, Defendant's acts were not based upon good faith or reasonable grounds.

115.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Lipsey, Lipsey possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

116.    The Named Plaintiff and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    liquidated damages equal to the amount of all unpaid compensation;

(b)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendant's violation of the Fair Labor Standards Act; and

(c)    such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO OVERTIME
### AND MINIMUM PAY STANDARDS ORDER, #38

### OVERTIME WAGES

1-116.  Paragraphs 1 through 116 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 116 of this Count IV.

117.    As described in the foregoing paragraphs, Defendant's compensation policies and practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq.*

118.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the minimum or overtime wage provisions of COMPS 7 CCR 1103-3.1, 4.1.

119.    Defendant was an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

120.    Under COMPS 7 CCR 1103-4.1, for all weeks during which Plaintiff and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

121.    Defendant's failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of COMPS 7 CCR 1103-4.1.

122.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of overtime wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid balance of the full amount of overtime wages due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of

Defendant's violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

    (d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT V

**SUPPLEMENTAL STATE LAW CLAIM**
**VIOLATION OF THE COLORADO OVERTIME**
**AND MINIMUM PAY STANDARDS ORDER, #38**

### UNIFORM DEDUCTIONS

1-122.  Paragraphs 1 through 122 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 122 of this Count V.

123.    As described in the foregoing paragraphs, Defendant's compensation policies and practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1-6.3.

124.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the wage deduction provisions of COMPS 7 CCR 1103-6.3.

125.    Defendant was an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

126.    Under COMPS 7 CCR 1103-6.3, where wearing a particular uniform or special apparel is a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel.[4]

127.    Further, COMPS 7 CCR 1103-6.3.2  provides that the cost of ordinary wear and tear of a uniform or special apparel shall not be deducted from an employee's wages.

---

[4] Except in two limited circumstances as provided by statute, which do not apply here.

128.     Lastly, as of March 16, 2020, employers may no longer require a uniform deposit as security for the return of a uniform furnished to an employee.[5]

129.     Lipsey's implementation and execution of wage deductions for uniforms was in further violation of COMPS, specifically COMPS 7 CCR 1103-6.3.

130.     COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of compensation due an employee under the law shall be liable to the underpaid employee or employees for the unpaid balance of the full amount of unpaid compensation due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)      back pay equal to the amount of all unpaid compensation, in the form of illegal wage deductions, for the three (3) years preceding the filing of this Complaint;

(b)      prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)      Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendant's violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)      such additional relief the Court deems appropriate under the circumstances.

## COUNT VI

**SUPPLEMENTAL STATE LAW CLAIM**
**VIOLATION OF THE COLORADO WAGE ACT**

1-130.  Paragraphs 1 through 130 of Count IV are re-alleged and incorporated as though

---

[5] https://cdle.colorado.gov/wage-and-hour-law/uniforms#:~:text=The%20cost%20of%20ordinary%20wear,deducted%20from%20an%20employee's%20wages

set forth fully herein as Paragraphs 1 through 130 of this Count VI.

131.    As described in the foregoing paragraphs, Defendant's compensation policies and practices are in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq.*

132.    The CWA defines wages as "[a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time". Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

133.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under CWA, C.R.S. §8-104-101(5) and were not exempt from the CWA's protections.

134.    Defendant was an "employer" as defined by CWA, C.R.S. §8-104-101(6) and was not exempt from compliance with the CWA.

135.    Pursuant to CWA, C.R.S. §8-4-101(14)(a)(II)-(III), Plaintiff and members of the Plaintiff Class, who were misclassified as exempt employees, worked hours in excess of 40 in individual work weeks which required pay at time and on-half their regular hourly rates of pay.

136.    Once Plaintiff and members of the Plaintiff Class worked hours over 40 in individual work weeks, they earned overtime compensation, although it was not paid. As such, the overtime premiums for which Plaintiff and members of the Plaintiff Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

137.    Plaintiff and members of the Plaintiff Class did not receive overtime premiums of one and one-half times their regular rates of pay for hours worked over 40 in individual work weeks.

138.     Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

139.     Plaintiff's Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a) for unpaid overtime wages on behalf of himself and members of the Plaintiff Class .

140.     Should Lipsey fail to tender the demanded compensation in the amounts due to Plaintiff and members of the Plaintiff Class pursuant to the CWA within fourteen (14) days, Plaintiff and members of the Plaintiff Class will be entitled to recover penalties described by to CWA, C.R.S. §8-4-109(3)(b) and (c).

141.     Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee can prove that the employer's failure to pay wages due under the Act, each of the penalties set forth under CWA, C.R.S. §8-4-109(3)(b) shall increase by 50%.

142.     Lipsey's failure and refusal to pay earned overtime wages, as demanded in writing herein within the fourteen (14) day period described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

143.     Plaintiff and members of the Plaintiff Class are owed all earned, unpaid overtime wages and statutory penalties, including increased penalties for willful violations of the CWA.

144.     Per CWA, C.R.S. §8-4-110, Plaintiff and members of the Plaintiff Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    unpaid, earned and vested overtime wages;

(b)    statutory penalties of 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)    additional statutory penalties of 50% on top of the penalties prescribed by CWA, §8-4-109(3)(b) for Lipsey's willful violation of the CWA;

(d)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendant's violations of the Colorado Wage Act; and

(f)    such additional relief the Court deems appropriate under the circumstances.

Respectfully submitted,

***Electronically Filed 07/18/2023***

/s/ Samuel D. Engelson
Samuel D. Engelson
Colorado Bar No: 57295

John William Billhorn
Attorneys for Plaintiff, and those similarly situated, known and unknown

BILLHORN LAW FIRM
53 W. Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312)-853-1450

7900 E. Union Ave., Suite 1100
Denver, Colorado 80237
(720)-386-9006